UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

**SOUNDRA TEMPLE JOHNSON**                    **CASE NO. 12-11811**

DEBTOR                                        CHAPTER 11

                                              (JOINTLY ADMINISTERED)

IN RE:

**JOHNSON PROPERTY GROUP, LLC**               **CASE NO. 13-11588**

DEBTOR                                        CHAPTER 11



**SOUNDRA TEMPLE JOHNSON and
JOHNSON PROPERTY GROUP, LLC**

PLAINTIFFS

V.                                            ADV. NO. 13-1022

**WOODLANDS DEVELOPMENT, LLC,
ANTHONY REGINELLI, JR.,
SHAWNA LANDRY REGINELLI, PETER R. STEUR,
LEE R. STEUR and REGIONS BANK**

DEFENDANTS


**MEMORANDUM OPINION**

Defendants Woodlands Development, L.L.C., Anthony Reginelli, Shawna Reginelli,

Peter Steur and Lee Steur (collectively "Woodlands") moved the court to dismiss or to abstain

from considering the amended complaint filed by plaintiffs Soundra Temple Johnson

("Johnson") and Johnson Property Group, L.L.C. ("JPG"), debtors in jointly-administered cases.[1] Woodlands seeks the same result as to defendant Regions Bank's ("Regions") cross claim. Woodlands has not established its right to dismissal or abstention in either instance.

## Procedural Background

Plaintiffs sued Woodlands and Regions for a declaration that insurance proceeds now in the registry of the 24th Judicial District Court for Jefferson Parish, Louisiana, belong solely to JPG. Plaintiffs' amended complaint[2] includes a demand for avoidance of Woodlands' and Regions' recording of judgments against Johnson and JPG as preferential transfers under 11 U.S.C. §547; and objections to the proofs of claim Regions and Woodlands filed in the bankruptcy cases.[3] Regions counterclaimed against the plaintiffs and cross claimed against Woodlands demanding a ranking of competing claims to the insurance proceeds, and in a third party demand sought an order directing the clerk of the 24th Judicial District Court to pay Regions the insurance proceeds.

## Facts

### *The Multiple Sales of the Woodlands Complex*

This controversy revolves around the repeated transfers of a New Orleans apartment complex (the "Property") that served as collateral for Regions' 2001 loan to Woodlands Group ("Regions Note"). Woodlands' members (Anthony Reginelli, Jr., Shawna Landry Reginelli,

---

[1] The debtor is JPG's sole member. JPG filed its own chapter 11 petition, case no. 13-11588, on November 15, 2013. The court ordered joint administration of the two cases (P-375).

[2] Plaintiffs' second amended complaint (P-73), filed after Woodlands moved to dismiss, also objects to the attorney's fees, interest and costs Woodlands included in its proof of claim.

[3] Both Woodlands and Regions filed claims in Johnson's case; as of the date of this opinion, only Regions has filed a claim in JPG's reorganization.

Peter R. Steur and Lee R. Steur) guarantied the 2001 loan, which first matured in 2005.  Regions

agreed to extend its due date to December 1, 2006.[4]

Hurricane Katrina damaged the Property on August 29, 2005, while it was insured by

underwriters at Lloyd's of London.  Woodlands later sued on the policy to recover for the

hurricane damage, eventually settling for $6.3 million.  The settlement funds ("Insurance

Proceeds") now are in the registry of the 24th Judicial District Court.[5]  In great part this litigation

is about the disposition of those proceeds.

The contest over ownership of the Insurance Proceeds stems from JPG's purchase of the

Property from Woodlands in late 2006.  JPG paid $100,000 cash and gave Woodlands a

$400,000 promissory note ("Woodlands Note").  It also agreed to assume Woodlands' debt to

Regions.[6]  In connection with that transaction, Soundra Temple Johnson personally guarantied

payment of the Regions debt,[7] thus becoming liable to Regions along with Woodlands and its

members, who remained obligated to the bank on their earlier personal guaranties of the Regions

Note.

An apparent difference in the documents relating to the transfer lies at the heart of this

lawsuit.  Specifically, the purchase agreement between Woodlands and JPG provided that "all

claims, causes of action, or suits against any insurer of property and all proceeds therefrom for

---

[4]  January 27, 2006 Forbearance and Extension Agreement, Exhibit 3 to Regions' Memorandum in Support of
Motion for Relief from Judgment, P-3 in related adv. no. 13-1049.

[5]  After the state court approved deductions for plaintiff's counsel's fees and expenses, about $5.16 million remains
in the registry.

[6]  September 27, 2006 Agreement of Purchase and Sale ("Purchase Agreement"), Exhibit 2 to Woodlands' Motion to
Dismiss and for Abstention, P-48 in the record of this case.  October 31, 2006 Sale of Immovable Property with
Assumption of Mortgage and a Sale of Movable Property, Exhibit 1 to Woodlands' Motion to Dismiss and for
Abstention, P-48 in the record of this case.  JPG's collateral mortgage in favor of Woodlands secured the $400,000
promissory note.

[7]  October 2006 First Amendment to Forbearance and Extension Agreement, ¶D, Exhibit A to Complaint for
Declaratory Judgment, P-1 in the record of this case.

any claim, cause of action or suit for events occurring prior to the closing date, and the right to settle those actions and retain the proceeds therefrom" were excluded from the sale and not transferred to JPG, but retained by Woodlands.[8]  In contrast, the sale document recites that: "SELLER transfers to PURCHASER all SELLER'S right, title and interest in and to any escrow account maintained in connection with the loan assumed and in and to any insurance policies affecting the property conveyed."[9]

JPG bought the Property with the plan to re-sell it,[10] and in fact a few months after its purchase transferred the complex to Crescent City Gates, L.L.C. ("CCG"), an entity that Johnson manages.  CCG assumed JPG's obligations under the Regions Note and the Woodlands Note.[11] About a month later CCG sold the Property to Crescent City Gates Fund, L.L.C. ("CCGF"), which assumed CCG's obligations to Regions and Woodlands.[12]  CCGF defaulted on all the assumed obligations soon after that sale.  That default triggered the mare's nest of litigation that eventually led first Johnson and then JPG to file chapter 11.

*The State Court Lawsuit*

Woodlands petitioned the 24th Judicial District Court for a declaration that their obligations to Regions were extinguished and also for judgment against Johnson and JPG on the

---

[8]  Agreement of Purchase and Sale, ¶1.4(e), Exhibit 2 to Woodlands' Motion to Dismiss and for Abstention, P-48 in the record of this adversary proceeding.

[9]  Sale of Immovable Property with Assumption of Mortgage, p. 3, ¶1; Sale of Movable Property, p. 2, ¶ 2, Exhibit 1 to Woodlands' Motion to Dismiss and for Abstention, P-48 in the record of this adversary proceeding.

[10]  First Amendment to Forbearance and Extension Agreement, ¶J, Exhibit A to Complaint for Declaratory Judgment, P-1 in the record of this adversary proceeding.

[11]  June 7, 2007 Act of Transfer, Exhibit 11 to Complaint to Determine Dischargeability of Debt, P-4 in adv. no. 13-1044.

[12]  January 10, 2008 Sale of Immovable Property with Assumption of Mortgage, Exhibit 14 to Complaint to Determine Dischargeability of Debt, P-4 in adv. no. 13-1044.

$400,000 promissory note ("State Court Action").[13]  Regions answered and reconvened against

the Woodlands for judgment on the original debt; it also cross-claimed Johnson and JPG on the

debt they'd assumed.  Finally, Johnson, JPG and CCG made a third-party demand against CCGF

for its breach of contract.

Several judgments have issued from that lawsuit:

(1) First, early in the litigation Regions moved to rank liens on the Insurance Proceeds.

Unfortunately, the September 15, 2009 judgment on that motion merely ordered

payment of some of the proceeds to the attorneys involved in the insurance litigation:

the state court did not rank the liens, but did order them placed in its registry.[14]

(2) Next, the state court granted Regions' motion for summary judgment in part and

dismissed all Woodlands' and the individual guarantors' claims against Regions,

though it preserved Regions' right to pursue its reconventional demand.[15]

(3) Later, the state court dismissed Regions' reconventional demand as a discovery

sanction ("Discovery Judgment").[16]

(4) It later adjudged Johnson and JPG liable to Regions for the balance due on the

Regions Note; liable to Woodlands for $400,000 plus fees and interest on the

---

[13] *Woodlands Development, L.L.C., Anthony Reginelli, Jr., Shawna Landry Reginelli, Peter R. Steur and Lee R. Steur v. Regions Bank, Soundra Temple Johnson and Johnson Property Group, L.L.C.*, Case No. 668-408 in the 24th Judicial District Court for the Parish of Jefferson, Division N.  Woodlands later filed a Second Supplemental and Amended Petition to add demands for: (1) a declaration that Regions had no right to any of the Insurance Proceeds and (2) breach of contract, novation, tortious interference with contract, fraud, misrepresentation and equitable subordination.

[14]  Exhibit 10, Regions' Opposition to Woodlands' Motion to Dismiss or, Alternatively, for Abstention, P-105 in the record of this adversary proceeding.

[15]  The August 3, 2010 Judgment of the state court is Exhibit 3 to Regions' Opposition to Woodlands' Motion for Remand, P-44 in the record of Adv. No. 13-1049.

[16]  Exhibit 1, Regions' Opposition to Woodlands' Motion to Dismiss or, Alternatively, for Abstention, P-105 in the record of this adversary proceeding.

Woodlands Note; and obligated to indemnify Woodlands on the Regions debt (collectively, the "Temple Judgments").[17]

None of the foregoing state court judgments *completely* resolved ownership of the Insurance Proceeds in the state court's registry.[18]

Regions and Woodlands afterward recorded the Temple Judgments in East Baton Rouge and West Baton Rouge Parishes.[19]  They also seized the plaintiffs' interest in a lawsuit styled *Soundra J. Temple, et al. v. Peter Losavio, Jr., et al.,* Case. No. 09-9508, Division H, Civil District Court for Orleans Parish, State of Louisiana ("Losavio Litigation").  Regions suspensively appealed the Discovery Judgment to the Louisiana Fifth Circuit Court of Appeal; Johnson and JPG devolutively appealed the Temple Judgments to the same court.  Both appeals are pending.

## Allegations of Amended Complaint, Counterclaim and Cross Claim

Plaintiffs' Amended Complaint comprises four counts:

(1) Count I demands a declaration that the Insurance Proceeds belong exclusively to JPG, subject only to the interest of Regions.

---

[17]   Exhibit 7, Regions' Opposition to Woodlands' Motion to Dismiss or, Alternatively, for Abstention, P-105 in the record of this adversary proceeding.

[18]   The Temple Judgments arose from Regions' Motion for Summary Judgment on the Johnson and JPG guaranties, Johnson and JPG's Cross-Motion for Summary Judgment against Regions and Woodlands Motion for Summary Judgment against Johnson and JPG.  In his written reasons for entering the Temple Judgments,  the state court judge stated that "[a]ny issue regarding insurance proceeds is between Regions and plaintiffs, as Ms. Temple has testified. The documents provide that Ms. Temple and JPG *have no interest in the insurance proceeds.*" (Emphasis added.) Though this language may not be dispositive of any issues on this motion, its preclusive effect may be relevant at later stages of this adversary proceeding.

[19]   A judicial mortgage secures a judgment for the payment of money.  La. Civil Code art. 3299.  Recordation of a judgment in a parish creates a judicial mortgage against the judgment debtor's immovable property in that parish. La. Civil Code art. 3300.

(2) Count II seeks to avoid the recording of the Temple Judgments and Woodlands' and Regions' seizure of the plaintiffs' interest in the Losavio Litigation as preferential transfers under 11 U.S.C. §547.

(3) Counts III and IV comprise objections to Woodlands' and Regions' claims.

    a.   Plaintiffs' objection to the Woodlands claim contends: (1) the Temple Judgments could be vacated or modified on appeal; (2) the claim should be offset by contribution or reimbursement Woodlands owes on the Regions debt; and (3) Woodlands' claim may include Regions' subrogation rights and if so must be subordinated [sic][20] to Regions' claim.

    b.   Plaintiffs object to the Regions claim on the ground that: (1) the Temple Judgments could be altered on appeal; and (2) Regions has not credited the Insurance Proceeds against the amount owed to it.

Regions' counterclaim against the plaintiffs and its cross claim against Woodlands both request a ranking of the liens on the Insurance Proceeds.

## Law and Analysis

*Motion to Dismiss and for Abstention – Amended Complaint*

    1.  <u>No grounds exist to dismiss Count I of the amended complaint.</u>

Woodlands argues that count I should be dismissed because the plaintiffs lack standing, a right of action[21] or any potential interest in the Insurance Proceeds entitling them to seek a

---

[20]  Though the amended complaint uses the word *subordinated*, the context of count III suggests that the plaintiffs meant to allege that Woodlands' claim should be *subrogated* to Regions' claim, not subordinated.

[21]  Johnson and JPG were not parties to the contract between Woodlands and Lloyd's of London or to the lawsuit to recover under the Lloyd's policy.

declaration that the proceeds belong to JPG.[22]  Woodlands insists that the *Purchase Agreement*

retained for it any claims or causes of action against Lloyd's and the proceeds from those actions,

neither of which it transferred to JPG.[23]  In contrast, the *sale documents*[24] arguably transferred to

JPG all of Woodlands' litigious rights under the Lloyd's insurance contract.  Woodlands reasons

that the language of the Purchase Agreement trumps the sale documents, and so concludes that

neither JPG nor Johnson has any standing to assert a claim to the Insurance Proceeds.

Lack of standing and no right of action are not identified as defenses that may be urged

by motion under Federal Rule of Bankruptcy Procedure 7012(b), thus Woodlands' motion is

properly treated as one to dismiss the complaint for failure to state a claim under Rule

7012(b)(6).

The United States Supreme Court replaced the "no set of facts"[25] standard for ruling on

motions under Rule 12(b)(6) with a "plausibility" standard in 2007.  *Bell Atlantic Corp. v.

Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  A plaintiff opposing

dismissal now must show that a complaint recites facts that, if accepted as true, are sufficient to

"state a claim that is plausible on its face."  *Id.  See also In re Katrina Canal Breaches Litigation*,

495 F.3d 191, 205 (5th Cir. 2007).  Federal courts ruling on motions to dismiss for failure to state

---

[22]  When Woodlands first filed its motion to dismiss only plaintiff Johnson was a debtor, thus Woodlands argued that the court lacked jurisdiction to determine whether property in which the debtor had no interest could be estate property.  JPG's own chapter 11 filing afterward mooted that argument because this court has jurisdiction to determine whether a debtor has an interest in property that became property of its bankruptcy estate upon filing.  11 U.S.C. §541(a); 28 U.S.C. §157(b)(1).

[23]  The Purchase Agreement specifically excluded from the proposed sale to JPG "all claims, causes of action, or suits against any insurer of property and all proceeds therefrom for any claim, cause of action or suit for events occurring prior to the closing date, and the right to settle those actions and retain the proceeds therefrom … ."  See, fn. 8, supra.

[24]  The relevant language in the sale documents is "SELLER transfers to PURCHASER all SELLER'S right, title and interest in and to any escrow account maintained in connection with the loan assumed and in and to any insurance policies affecting the property conveyed."  See, fn. 10, supra.

[25]  *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

a claim generally must "limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996). In light of these authorities, Woodlands Group has not established that dismissal is appropriate.

Count I alleges that in the sale documents, Woodlands transferred to JPG all of its rights to the insurance policy that generated the Insurance Proceeds, and therefore to the proceeds themselves. JPG's pleadings and the attached exhibits plausibly state a claim to ownership of the Insurance Proceeds, accepting plaintiffs' interpretation of the terms of the sale documents as true solely for the purposes of this motion.[26] Woodlands' argument turns on its interpretation of the Purchase Agreement and the sale documents, and though eventually it may prove to have the better of the argument, its analysis is not appropriate on a motion to dismiss for failure to state a claim.[27]

Woodlands' motion to dismiss is denied as to Count I.

   2.   <u>No grounds exist for abstention as to any counts of the amended complaint.</u>

Woodlands next argues for abstention from hearing amended complaint Counts I, III and IV because those claims rest on state law; and from hearing Counts III and IV, which relate to state court judgments that are currently on appeal. Neither argument is persuasive.

---

[26] The October 2006 Sale of Immovable Property with Assumption of Mortgage is an authentic act which "constitutes full proof of the agreement it contains, as against the parties … ." La. Civ. Code art. 1835. An authentic act "is a writing executed before a notary public or other officer authorized to perform that function, in the presence of two witnesses, and signed by each party who executed it, by each witness, and by each notary public before whom it was executed." La. Civ. Code art. 1833.

[27] In assessing a motion to dismiss for failure to state a claim, courts may consider "matters of which they may take judicial notice … [but] only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents." *Lovelace,* 78 F.3d at 1017-18 (citations omitted). Accordingly, the court can take judicial notice of the Purchase Agreement even though it was not attached to the amended complaint because it lies elsewhere in the record of this adversary proceeding.

Mandatory abstention from hearing bankruptcy matters is provided for in 28 U.S.C. §1334(c)(2):

> Upon timely motion of a party in a proceeding based on a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such a proceeding if an action is commenced, and can be timely adjudicated in a State forum of appropriate jurisdiction.

This statute does not apply for two reasons.  First, it is applicable only in proceedings related to bankruptcy cases, not in cases arising under the Bankruptcy Code; in other words it does not apply to core proceedings.[28]  Determination of property of the estate and allowance or disallowance of claims are both core proceedings.  Second, mandatory abstention is proper when the pending state court proceeding "can be timely adjudicated in a State forum."  Woodlands has offered nothing to support a conclusion that the matters in various state courts can be timely adjudicated.

Alternatively, a court may abstain permissively "in the interests of justice, or in the interest of comity with State courts or respect for State law…."  28 U.S.C. §1334(c)(1).  The Fifth Circuit set out the considerations for permissive abstention in *Browning v. Navarro*, 743 F.2d 1069, 1076 fn. 21 (5th Cir. 1984).  They are:

(1) forum non conveniens;

(2) if the civil action has been bifurcated by removal, the entire action should be tried in the same court;

---

[28] *Core* proceedings are matters that arise under the Bankruptcy Code or arise in a case under the Bankruptcy Code. 28 U.S.C. §157(b)(1).  Among core proceedings are "(A) matters concerning the administration of the estate; (B) allowance or disallowance of claims against the estate …; [and] (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship."  28 U.S.C. §157(b)(2).  In contrast, a *related* proceeding (sometimes denominated *non-core*, though that term does not appear in the statute) is one in which "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy."  *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987) (Emphasis in original).

(3) whether a state court is better able to respond to questions involving state law;

(4) the expertise of a particular court;

(5) duplicative and uneconomic effort of judicial resources in two forums;

(6) prejudice to the involuntarily removed parties;

(7) comity considerations; and

(8) a lessened possibility of an inconsistent result.

None of the *Browning* factors favor permissive abstention.

Factors 1, 2, 5 and 6 are inapplicable. Johnson's bankruptcy case has been pending in this court since December 2012 and all parties to this adversary proceeding have regularly participated in both the reorganization and related litigation.

Nor are the third, fourth and eighth factors relevant. Although all four counts of the amended complaint involve core bankruptcy issues within the meaning of 28 U.S.C. §157(b)(2) – determining property of the estate, avoiding a preferential transfer and allowing or disallowing claims – all but the preference claim will require analysis and application of Louisiana law. However, none of the state law issues raised are novel or complicated, necessitate expertise in any specialized area of state law or are likely to lead to an outcome inconsistent with the state courts' rulings.

The sole factor that could support abstention is the pendency of the state court appeals, but it similarly does not weigh in favor of abstaining. If the Louisiana Fifth Circuit decides the appeals in a way that alters the lower state courts' judgments so as to affect the proofs of claim, the claims can be revisited.[29]

---

[29] *See* 11.U.S.C. §502(j) which states that "[a] claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case."

*Motion to Dismiss or, Alternatively, for Abstention – Cross Claim*

Woodlands also urges dismissal of Regions' cross claim, or alternatively that the court abstain from adjudicating it.

Regions has cross claimed for a ranking of competing claims to the Insurance Proceeds. Woodlands concedes that Regions has standing to litigate the competing claims to the proceeds.[30]  Regions' cross claim does recite facts – drawn principally from the Purchase Agreement and sale documents – that make a plausible claim to its ownership of or a lien on the Insurance Proceeds.  Accordingly, Woodlands' motion to dismiss the cross claim for failure to state a claim fails for the same reasons Woodlands could not prevail on its motion to dismiss the plaintiffs' complaint.

Nor has Woodlands made out a case for abstention.  Significantly, the cross claim for several reasons is a core proceeding under 28 U.S.C. §157(b)(2).  First, it puts at issue the ownership of a potential asset of the JPG estate.  Second, the validity and priority of Regions' lien on the Insurance Proceeds is a core matter.  Third, Johnson and JPG's Fourth Amended Plan of Reorganization proposes to use the Insurance Proceeds to pay Regions' claim.[31]  In sum, determining who owns the Insurance Proceeds is critical to the process of plan confirmation.

Although the cross claim's status as a core proceeding is not dispositive of the abstention issue it is persuasive, especially because the other *Browning* factors do not favor abstention.  The analysis of these factors with respect to the cross claim is the same as for the amended complaint, with the qualification that comity is even less at issue on the cross claim.  Because the state court has never fully resolved all of the parties' competing claims to the Insurance Proceeds, no state

---

[30]    Memorandum of Woodlands Development Group, LLC Regarding Impact of Johnson Property Group, LLC's Chapter 11 Filing on the Instant Adversary Proceeding, p. 15-16 (P-150).

[31]    Fourth Amended Plan of Reorganization, ¶4.3 (P-380).

court ruling on this point deserves deference. In any event ownership of the Insurance Proceeds is essential and this court can rule on the state law issues.

*Issues Raised by Stern v. Marshall*

Because some of the claims of the amended complaint and the cross claim are based on state law, this dispute implicates issues framed by the United States Supreme Court's decision in *Stern v. Marshall*, ___ U.S. ___, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011) concerning a bankruptcy court's power to adjudicate state law claims.  The Fifth Circuit recently explained that despite *Stern*'s insistence that its decision was narrow, the ruling was in fact "'grounded in principles that are broad in scope.'"  *In re BP RE, L.P.*, 735 F.3d 279, 289 (5th Cir. 2013), quoting *Frazin v. Haynes & Boone, L.L.P.*, 732 F.3d 313, 319 (5th Cir. 2013).  The *BP RE* court reasoned that if a bankruptcy court lacked constitutional authority to render a final judgment on a state law *counterclaim* not involved in ruling on a creditor's claim (the issue in *Stern*), "it would also not have constitutional authority over a state law *claim* … " under similar circumstances. *Id.* at 290 (emphasis added).

In light of the record and the history of the parties' disputes, to guard against the possibility that this court's power to render a final judgment adjudicating any state law claims in the amended complaint or cross claim may be subject to later challenge, and to avoid the possibility of inefficient use of judicial time and the parties' resources, the parties shall formally consent[32] to the court's rendering of a final judgment over all matters in this adversary proceeding or else move to withdraw the reference to this court from the United States District Court.

---

[32]  Obtaining explicit consent is a precaution in anticipation of the decision of the United States Supreme Court in *Executive Benefits Insurance Agency v. Arkison*, 702 F.3d 553, 570 (9th Cir. 2012), *cert. granted* ___ U.S. ___, 133 S.Ct. 2880, 186 L.Ed.2d 908 (June 24, 2013).

**Conclusion**

Woodlands Motion to Dismiss and for Abstention is denied as to both the amended complaint and Regions' cross claim.  Within thirty days of the entry of this order, all parties to this proceeding shall consent to this court's rendering a final judgment in this case, failing which every party not consenting shall, also within 30 days of the entry of this order, move to withdraw the reference of this adversary proceeding to the United States District Court.

Baton Rouge, Louisiana, February 24, 2014.

<u>**s/Douglas D. Dodd**</u>
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE